Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000032
13-DEC-2013
08:24 AM

NO. CAAP-13-0000032

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
STEVEN ALLEN SMITH, Defendant-Appellee.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 11-1-1804)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Plaintiff-Appellant State of Hawai'i (State) appeals from the Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Statements (Suppression Order), filed on December 19, 2012, in the Circuit Court of the First Circuit (circuit court).[1]

In its Suppression Order, relying on State v. Eli, 126 Hawai'i 510, 273 P.3d 1196 (2012), the circuit court granted Defendant-Appellee Steven Allen Smith's (Smith) motion to suppress a recorded statement that Smith gave to a Honolulu Police Department (HPD) detective (Detective) while in custody at the HPD main station.

_____

[1] The Honorable Karen S.S. Ahn presided.

On appeal, the State challenges the circuit court's conclusions of law regarding Eli and the granting of Smith's Motion to Suppress Statements (motion to suppress).

For the reasons discussed below, we affirm.

I. **Standard of Review**

> We review the circuit court's ruling on a motion to suppress de novo and must look to the entire record on appeal to determine whether the ruling was right or wrong. A trial court's conclusions of law are reviewed under the right/wrong standard. A conclusion of law is not binding upon an appellate court and is freely reviewable for its correctness. This court examines the facts and answers the question without being required to give any weight to the trial court's answer to it.

State v. Joseph, 109 Hawai'i 482, 493, 128 P.3d 795, 806 (2006) (internal quotation marks and citations omitted).

II. **Background**

On December 5, 2011, Detective initially met with Smith outside of an HPD interview room. As found by the circuit court and unchallenged on appeal, at that time Smith was under arrest and in custody for Attempted Murder in the Second Degree and Robbery in the First Degree.

Without first providing a Miranda warning, Detective asked Smith whether he would like to give a statement. Smith acknowledged that he wanted to speak with Detective. Smith and Detective then entered the nearby interview room and Detective turned on the tape recorder. Detective asked multiple "precursory" questions prior to administering Smith's Miranda rights. Smith elected to waive his Miranda rights and to answer Detective's questions.

On December 14, 2011, the State charged Smith with Robbery in the First Degree in violation of Hawaii Revised Statutes (HRS) § 708-840(1)(b)(i) (Supp. 2012), Attempted Assault in the First Degree in violation of HRS §§ 705-500, 707-710 (1993), and Assault in the Second Degree in violation of HRS § 707-711(1)(d) (Supp. 2012). On July 20, 2012, Smith filed a

2

motion to suppress. On November 19, 2012, the circuit court held a hearing on the motion to suppress.

On December 19, 2012, the circuit court granted Smith's motion to suppress and made the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On December 5, 2011, at around noon, [Detective] met the Defendant for the first time at the HPD Main Station, in the area near the police station's interview area.

2. [Detective] asked the Defendant his name, introduced himself and then asked the Defendant if he would like to make a statement. [Detective] informed the Defendant that he could refuse to make a statement and could speak to an attorney.

3. At the time, as suggested by State's exhibit 3, the Defendant was under arrest and in custody for Attempted Murder in the Second Degree and Robbery in the First Degree.

4. [Detective] said nothing to the Defendant about sharing the Defendant's side of the story or any other allegations relating to the case.

5. The Defendant acknowledged that he wanted to speak with [Detective], so the two went to an interview room, where [Detective] turned on [a] tape recorder.

6. At the start of the recording, [Detective] stated that "the following is going to be a digitally recorded interview with a suspect . . . I want to ask you before I turned on the digital recorder did we discuss anything about the case?" The Defendant answered, "No, we didn't."

7. Subsequently, [Detective] administered to the Defendant his Miranda rights and the Defendant elected to waive those rights and answer [Detective's] questions.

8. If any of these findings of fact are later found to be conclusions of law, they shall be so deemed.

### CONCLUSIONS OF LAW

1. On December 5, 2011, at the time of the interview in question, the Defendant was in custody.

2. State v. Eli, 126 Haw. 510 at 522-23 (2012) suggests at some points that merely asking a Defendant whether he wants to give a statement, without more, and before administering Miranda Rights, constitutes a violation of a Defendant's constitutional rights. However, the case also discusses its specific facts in seeking to answer the question of whether "Interrogation"

3

occurred, to wit, whether or not the officer "should have known that his words or actions were reasonably likely to elicit an incriminating response from the person in custody . . . to speak about the circumstances of the case that had resulted from his arrest." As the Supreme Court stated: "Given that the Defendant was advised he was under arrest for assault, and his child was in the hospital allegedly due to his acts, the Detective should have known that asking him for his side of the story and indicating that it was his chance to give that story, was 'reasonably likely' to elicit an incriminating response; in other words, it was reasonably likely that the Detective's question and statement solicited the Defendant to speak about the circumstances of the case that had resulted in his arrest. Id.

3. Here, if the test is whether under these circumstances [Detective] should have known that his words or actions were reasonably likely to elicit an incriminating response from the person in custody, then asking the question, "Would you like to make a statement?" without more seems neutrally worded and not necessarily reasonably likely to elicit an incriminating response. If Eli's test dictates that merely asking, before an administration of Miranda Rights, whether a custodial suspect wants to give a statement, without anything more, is a per se violation of Miranda, then this motion must be granted.

4. Based upon the foregoing, the Motion is GRANTED.

On appeal, the State contends that the circuit court erred in its Conclusions of Law 2, 3, and 4 and in granting Defendant's motion to suppress. The circuit court's findings of fact are unchallenged and therefore we are bound by those findings. State v. Rapozo, 123 Hawai'i 329, 334 n.4, 235 P.3d 325, 330 n.4 (2010).

III. Discussion

Miranda warnings must be provided when a defendant is "(1) in custody, and (2) under interrogation." State v. Eli, 126 Hawai'i 510, 521, 273 P.3d 1196, 1207 (2012) (citing State v. Ah Loo, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000)). Here, the State agrees, and there is no question, that Smith was under arrest and in custody.

4

This appeal thus initially turns on whether Smith was "under interrogation" before Detective provided Smith with his Miranda rights. In Eli, the Hawaiʻi Supreme Court stated:

> As to interrogation, this court has held that it involves any practice reasonably likely to invoke an incriminating response without regard to objective evidence of the intent of the police. The interrogation element depends on whether the police officer should have known that his or her words or actions were reasonably likely to elicit an incriminating response from the person in custody. As stated before, an incriminating response refers to both inculpatory and exculpatory responses.

Eli, 126 Hawaiʻi at 522, 273 P.3d at 1208 (citations, internal quotation marks, and brackets omitted). In Eli, the circumstances were a little different than this case. In particular, in Eli, during the pre-interview before giving the defendant his Miranda rights, the detective not only asked the defendant if he wanted to give a statement, but also told the defendant it was his "chance to give his side of the story." Id. at 515, 273 P.3d at 1201. Moreover, in Eli, the detective agreed that he had obtained a waiver from the defendant before administering the Miranda warnings. Id. at 515-16, 273 P.3d at 1201-02.

On the question of interrogation, Eli provides, in pertinent part:

> Given that Defendant was advised he was under arrest for assault, and his child was in the hospital allegedly due to his acts, Detective should have known that asking Defendant for his side of the story and indicating that it was his chance to give that story was "reasonably likely" to elicit an incriminating response; in other words, it was reasonably likely that the detective's question and statement solicited Defendant to speak about the circumstances of the case that had resulted in his arrest. Similar to Joseph, the detective's pre-interview invitation to Defendant to give his "side of the story" was a "practice reasonably likely to invoke an incriminating response [even] without regard to ... the intent of the police[.]" Joseph, 109 Hawaiʻi at 495, 128 P.3d at 808. Moreover, in this case the detective concurred that by his prior questions he had already obtained an answer from Defendant—a "waiver" that he was going to "give a statement," although Defendant had yet to be informed of his Miranda rights. Hence, under the circumstances, "it is evident that Miranda warnings, as

> independently grounded in the Hawai'i Constitution, [were] required prior to [this] pre-interview." Id. at 495, 128 P.3d at 808.

Id. at 522-23, 273 P.3d at 1208-09. The supreme court further reasoned:

> The police's custodial solicitation of Defendant's side of the story without first informing Defendant that he had the right to remain silent is prohibited under *Miranda*. It must be reemphasized that "*Miranda* recognizes a waiver of rights *only if those rights are known to the defendant*[,]" and "[n]othing but mischief would flow from a rule that would permit a defendant to *waive the right to be informed* of the rights embodied in the *Miranda* warnings." [Joseph] at 497 128 P.3d at 810 (internal quotation marks and citation omitted) (emphases added).

> By asking Defendant if he wanted to give his side of the story without first stating the *Miranda* warnings, Detective violated Defendant's right to be informed of his right to remain silent before making the decision and commitment to give a statement. In inviting Defendant to speak and in obtaining his commitment to do so before *Miranda* warnings were given, the police elicited statements without informing Defendant of the consequences of his waiving his right to remain silent and the entire panoply of rights such a commitment involved. In effect, in getting Defendant to agree to give a statement before being informed of his rights, the police invoked a practice that would permit a defendant to waive the right to be informed of his *Miranda* rights when *Miranda* recognizes a waiver of rights only if those rights are known to the defendant. See id. Accordingly, in this case there could be no valid waiver of Defendant's right to remain silent.

Id. at 523, 273 P.3d at 1209 (underline emphasis added).

Here, at the time Detective asked Smith whether Smith wanted to make a statement, Smith had been under arrest and in custody for Attempted Murder in the Second Degree and Robbery in the First Degree. The record reflects that two officers had retrieved Smith from his cell and brought him to an area near the interview rooms, where Smith met Detective for the first time. After asking Smith his name and introducing himself, Detective asked Smith if he wanted to make a statement. Detective informed Smith that he could refuse to make a statement and could speak to an attorney, but Detective did not provide Smith with his full Miranda rights at that time. Smith indicated he wanted to speak

to Detective and they then entered an interview room where Detective activated a tape recorder. Unlike in Eli, Detective did not give Smith his Miranda rights immediately after Smith indicated he wanted to give a statement. Rather, Detective asked Smith more than thirty-five questions before giving Smith his Miranda rights.

This case is not exactly like Eli. When Detective asked Smith if he wanted to make a statement, Detective did not also tell Smith it was Smith's chance to tell his side of the story. Under the circuit court's ruling, this distinction would be immaterial because the court interpreted Eli as setting forth a per se rule that merely asking whether a custodial suspect wants to give a statement before administering the Miranda rights is prohibited. We do not agree that Eli sets out such a per se rule in every circumstance. However, neither do we believe that Eli is limited to situations where, in addition to inviting a statement, an officer tells a person in custody that it is his or her chance to tell their side of the story. Rather, we conclude that this case is similar enough to Eli that admission of Smith's recorded statement is precluded. That is, after being held in custody, Smith was invited to make a statement by Detective and appears to have made a commitment to make a statement without having been given his Miranda rights. Although Detective did not explicitly agree, like the detective in Eli, that he had secured a waiver from Smith before providing the Miranda rights, Detective did testify that he asked Smith questions before going into the interview room because "[i]f he doesn't want to go and provide me a statement, I'm not going to inconvenience him and take him into an interview room or -- or, you know, displace him if he doesn't want to make a statement."

Moreover, after Smith indicated that he wanted to make a statement, Detective asked Smith a number of questions before

eventually giving Smith his Miranda rights, including questions about Smith's nicknames, address, social security number, phone number, employment, understanding of the English language, schooling, medication, recent drug use, and his consumption of alcohol prior to being arrested. Although Detective testified that these were "precursory" questions just to establish that Smith was in the right frame of mind and was not incompetent, some of these pre-Miranda questions pertained generally to the time period during which the alleged offenses had occurred the previous day.

Under the circumstances of this case, we therefore hold that Smith was "under interrogation" before he was given his Miranda rights.

Furthermore, Smith's statements after being given his Miranda rights are not admissible at trial because "the fruit of the poisonous tree doctrine prohibits the use of a statement at trial which has come to light as a result of the exploitation of a previous illegal act of the police." Eli, 126 Hawai'i at 523, 273 P.3d at 1209 (quoting Joseph, 109 Hawai'i at 498, 128 P.3d at 811) (internal quotations marks and brackets omitted). When a defendant's Mirandized statement is "directly 'predicated' on his agreement, pre-Miranda, to make a statement[,]" then the "Mirandized statement was obtained by exploiting the illegality of the pre-interview procedure." Id. at 524, 273 P.3d at 1210.

Here, after being given his Miranda rights, Smith agreed to tell Detective "what happened." However, Smith's subsequent Mirandized statements were directly predicated on his telling Detective, before entering the interview room, that he would give a statement. Moreover, we agree with Smith that the "precursory" questions Detective asked after they entered the

interview room and pre-<u>Miranda</u>, had the effect of solidifying Smith's agreement to give a statement.

Further, there were no intervening circumstances between the pre- and post-<u>Miranda</u> interviews between Smith and Detective that dissipated the taint of the pre-interview violation. <u>See</u> <u>Eli</u>, 126 Hawai'i at 525, 273 P.3d at 1211. The taint may dissipate if the pre- and post-<u>Miranda</u> interviews were not conducted by the same detective or if a sufficient amount of time passed between the two interviews. <u>Id.</u> at 524-25, 273 P.3d at 1210-11. Here, Detective conducted both interviews and the only intervening events involved entering the interview room, beginning the digital recording, and Detective asking the "precursory" questions.

## IV. <u>Conclusion</u>

Based on the above, the Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Statement, filed on December 19, 2012, in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, December 13, 2013.


On the briefs:

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellant

Summer M.M. Kupau
Deputy Public Defender
Office of the Public Defender
for Defendant-Appellee

Presiding Judge

Associate Judge

Associate Judge